UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBYNNE ALEXANDER, <br><br> MOVANT, <br><br> v. <br><br> U.S. SECURITIES AND EXCHANGE COMMISSION, <br><br> RESPONDENT. | : <br> : <br> : <br> : <br> : <br> : No. 1:24-mc-00032-JL-AJ <br> : <br> : <br> : <br> : |

**VERIFIED OPPOSITION OF RESPONDENT
U.S. SECURITIES AND EXCHANGE COMMISSION TO
MOVANT'S MOTIONS TO QUASH THREE SUBPOENAS**

Pursuant to the Court's May 2, 2024, Order, Respondent U.S. Securities and Exchange Commission ("SEC") respectfully opposes the three motions, dated April 24, 2024, that Movant, Robynne Alexander ("Alexander"), filed seeking to quash three investigative subpoenas that the SEC served on the San Diego County Credit Union, Primary Bank, and Wells Fargo Bank.[1]

Invoking the customer challenge provisions of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3401 *et seq.*, Alexander claims

---

[1] Pursuant to 12 U.S.C. § 3410(b), Brandon Sisson, an attorney with the SEC's Division of Enforcement (ENF), has verified the facts in this Opposition. The SEC has designated Mr. Sisson—and others—to issue subpoenas and conduct this investigation. *See* 15 U.S.C. § 78u(b).

1

that the SEC is not entitled to access to her bank records.[2] The Court should deny the Motion regarding the subpoena to Primary Bank as moot because Primary Bank has notified the SEC that it has "no personal accounts under the name of Robynne Alexander" and has already produced "all the documentation [for] accounts on which [Ms. Alexander] was an authorized signer."[3] The Court should deny the remaining two motions (and the motion regarding Primary Bank if the Court finds the motion is not moot) and enforce the subpoenas because "there is reason to believe that the records sought are relevant to a legitimate law enforcement investigation." 12 U.S.C. §3405(1).

---

[2] The RFPA prescribes the procedures for processing objections to administrative subpoenas for bank records. *See* 12 U.S.C. § 3410. The statute contemplates that a court will initially review an objection to determine whether the movant has complied with the prima facie requirements of 12 U.S.C. § 3410(a). If the court finds that the movant has met those requirements, as this Court has done, it orders the Government to file a response. *See* 12 U.S.C. § 3410(b). The RFPA provides that the court will decide the motion within seven days after receiving the Government's response. *Id.*

[3] *See Coleman v. Ford Motor Co.*, No. 11-cv-359-JL, 2012 WL 2918746, at *1 (D.N.H. July 17, 2012) (noting that a motion to quash a subpoena was moot where the entity that received the subpoena had "already responded to the subpoena served on it by stating that it does not possess any of the sought-after records"). The accounts on which Alexander was an authorized signer were not subject to the RPFA because they were not accounts of an individual or of a partnership of five or fewer individuals. *See* 12 U.S.C. §§ 3401, 3402 (the RFPA applies to financial records of customers, and for purposes of the RFPA, customers are individuals or partnerships of five or fewer individuals).

I.   **FACTS**

Staff of the SEC's Boston Regional Office ("Staff") is investigating whether certain real estate development companies, persons affiliated with these companies, or others offered or sold securities in violation of the antifraud provisions of the federal securities laws. In the investigation, captioned *In the Matter of Legacy at Laconia, LLC,* B-03732, the SEC issued the attached Formal Order ("Formal Order") dated March 18, 2024, empowering Staff to, among other things, require the production of documents deemed relevant to the investigation.[4] The Formal Order states, in part:

> The Commission has information that tends to show that from at least March 2023: . . . Legacy at Laconia LLC, Any Property Rehab LLC, and/or GILF80, LLC, their officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities, directly or indirectly, in the offer or sale of certain securities, may have been or may be employing devices, schemes, or artifices to defraud, obtaining money or property by means of untrue statements of material fact or omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were or are made, not misleading, or engaging in transactions, practices or courses of business which operated, operate, or would operate as a fraud or deceit upon the purchaser.

This conduct would violate Section 17(a) of the Securities Act of 1933, 15 U.S.C. §77q(a).  The Formal Order also describes possible conduct by the

---

[4] The Formal Order is attached as Exhibit A.

3

same entities that would violate Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5, issued thereunder, 17 C.F.R. §240.10b-5. The Formal Order applies to the investigation of all three of the entities named in the Formal Order and other similar or related entities and persons.

During the course of the SEC's investigation, Staff has received information showing that the companies named in the Formal Order are real estate development companies and that Alexander is a principal of each company. Since obtaining the Formal Order, Staff has obtained information about other real estate development companies with which Alexander was associated and that may also have engaged in violations of the federal securities laws.[5] Staff believes that Alexander's responsibilities include soliciting investments in the various real estate development companies and directing the activities of those companies.

---

[5] This additional information includes a civil complaint against Alexander and others filed in the New Hampshire Superior Court that alleges that the plaintiff invested $150,000 in a real estate project known as Elm and Baker LLC and/or Four on Elm. *See Oteri v. Alexander*, Case No. 216-2023-CV-00737 (N.H. Superior Court, Hillsborough County, Northern District). The complaint alleges that Alexander solicited investments and made multiple misrepresentations regarding the investment and underlying project. The complaint and the attached documents tend to show that Alexander was soliciting (and receiving) at least one investment that came within the definition of "security" in the federal securities laws, 15 U.S.C. § 78c(10).

Staff has also learned that Alexander may have received at least $450,000 between April 2023 and January 2024 from apparent investors in one or more of her projects and deposited that money in the real estate development companies' bank accounts and in a trust account Alexander maintains at Bar Harbor Bank & Trust ("Bar Harbor Bank").[6]  Alexander was a signatory for all of those accounts.  Staff has reason to believe that Alexander may have caused a significant amount of the money from apparent investors to be used for purposes other than the specific real estate investment that they intended to invest in.  For example, Staff has evidence that Alexander used part of a $100,000 wire transfer from an apparent investor on one project to pay $46,339 to another apparent investor on another project to whom she owed money.

The Staff has also reviewed bank records for six real estate development companies operated by or affiliated with Alexander, including the three named in the Formal Order. The Staff found that between 2019 and 2024 Alexander made frequent transfers between and among some of these real estate development company accounts, other real estate development company accounts, the Bar Harbor Bank trust account, and her personal

---

[6] In addition to providing notice to Alexander of investigative subpoenas that the SEC served on the San Diego County Credit Union, Primary Bank, and Wells Fargo Bank, the SEC provided Alexander with notice that it served an investigative subpoena on Bar Harbor Bank.  Alexander has not sought to quash that subpoena.

bank accounts. Alexander made thirty-five transfers from her personal or trust accounts into the business accounts, totaling approximately $230,000. Those records also showed 14 disbursements from Alexander's business accounts to her personal or trust accounts totaling approximately $110,000. Staff identified at least five transactions that involved a personal account at San Diego County Credit Union. The Staff also identified at least 10 instances where Alexander made in-person cash withdrawals from business accounts totaling more than $200,000.

 On April 23, 2024, the Staff issued subpoenas to San Diego County Credit Union and to Wells Fargo Bank because transactions in the bank accounts for the real estate development companies indicated that Alexander may have accounts at those banks. Staff issued a subpoena to Primary Bank because the real estate development companies had accounts there. The Staff issued subpoenas to determine whether Alexander or others involved in her real estate development companies had deposited investor money in her personal bank accounts. And if she did, how much she received, the identities of the investors or other persons, and how she used or where she transferred any such money.

 Staff also seeks information about any money she received from the real estate development companies so that it can trace any funds that may be

subject to disgorgement and identify other persons who may be involved with the companies as investors or otherwise. Consistent with the RFPA, the SEC simultaneously notified Alexander of her rights under that law to challenge the subpoenas for her "customer" account records.

## II. ARGUMENT

### A. The RFPA is the sole vehicle for customers to challenge a federal agency's subpoena for their bank records.

The RFPA provides the sole means for a customer to challenge a federal agency's subpoena for bank records. *See* 12 U.S.C. § 3410(e); *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 745-46 (1984). A court must deny a customer's RFPA challenge to a subpoena if the government agency can establish the relevance of the subpoenaed documents to a legitimate law enforcement inquiry. "Upon finding that there is a demonstrable reason to believe that the agency is conducting a legitimate law enforcement inquiry and that the records sought are relevant to that inquiry, the court 'shall deny the motion to quash.'" *Sandsend Financial Consultants, Ltd v. Federal Home Loan Bank Board*, 878 F.2d 875, 877 (5th Cir. 1989) (quoting 12 U.S.C. § 3410(c)). *See also Karlis v. SEC*, 613 F. Supp. 2d 150, 152-53 (D. Mass. 2009) (stating, in considering a RFPA motion, "this Court must deny the motion if [']there is demonstrable reason to believe that the law

7

enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry.[']" (quoting 12 U.S.C. § 3410(c)).

### B. The SEC is conducting a legitimate law enforcement investigation.

Sections 19(c) and 20(a) of the Securities Act, 15 U.S.C. §§ 77s(c), 77t(a), and Section 21(a), (b) of the Exchange Act, 15 U.S.C. § 78u(a), (b), authorize the SEC to investigate possible violations of the federal securities laws and subpoena documents. Because the SEC here issued a Formal Order following these provisions, a "demonstrable reason [exists] to believe that the law enforcement inquiry is legitimate." *Rodriguez v. FSLIC*, 712 F. Supp. 159, 162 (N.D. Cal. 1989); *see also Pennington v. Donovan*, 573 F. Supp. 708, 709 (S.D. Tex. 1983) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political-harassment or intimidation or otherwise in bad faith."); *Karlis*, 613 F. Supp. 2d at 153 (finding a law enforcement inquiry was legitimate where the SEC "acted under a formal order entered pursuant to its statutory authority"); *Dawar v. HUD*, 820 F. Supp. 545, 547 n.2 (D. Kan. 1993) (finding that an Inspector General investigation was clearly legitimate where the Inspector General had statutory authority to subpoena documents relevant to investigations). "Congress has endowed the

8

Commission . . . with broad power to conduct investigations—'such . . . as it deems necessary to' ferret out violations of the federal securities laws and implement regulations, whether consummated or incipient—and [to seek the] production of relevant materials by those who seem to have them." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1023 (D.C. Cir. 1978) (footnotes omitted), *cert. denied*, 439 U.S. 1071 (1979).

The SEC's investigation of Alexander is legitimate, and Alexander offers no argument to the contrary.

### C. The subpoenaed documents are relevant to the SEC's investigation.

Courts broadly construe the term "relevant" in considering an RFPA challenge to an agency's investigative subpoena. "Subpoenaed information is *relevant if it 'touches a matter under investigation*,'" *Hamilton*, 2021 WL 6102420, at *3 (emphasis added) (quoting *Sandsend*, 878 F.2d at 882), or "'might throw light' on a matter germane to the Commission's inquiry," *CFTC v. Catalano*, 1981 U.S. Dist. LEXIS 15728, November 3, 1981, No. 81 C 4315 et al., at *2 (N.D. Ill. 1981). *See also Karlis*, 613 F. Supp. 2d at 153 ("the SEC must show only that there is a reasonable belief that the records are relevant"); *In re U.S. SEC Private Investigation, etc.,* 1990 U.S. Dist. LEXIS 10460, at *2, Misc. No. M8-85 (MBM) (S.D.N.Y. 1990) ("the statute does not require the agency to show that the records are relevant but

9

rather that *agency staff have a 'reasonable belief that the records sought are relevant'"*) (emphasis added); *United States v. Wilson*, 571 F. Supp. 141, 142 (S.D.N.Y. 1983) ("the RFPA requires only that financial information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense").

The SEC is entitled to the records that it has here subpoenaed because the Staff has a "reasonable belief that the records are relevant" to the investigation of Alexander's use of investor funds and assets. As described above, the subpoenaed bank records may help Staff identify transactions and trace money related to potential violations of the federal securities laws and also identify investors or persons who may have engaged in possibly illicit conduct.

Obtaining bank records to "follow the money" is a proper—and often necessary—investigative technique. *See, e.g., Feiner v. SEC*, 914 F. Supp. 2d 474, 478 (S.D.N.Y. 2012) ("Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct. . . . *The SEC's task is to follow the money.*") (emphasis added); *In re U.S. SEC Private Investigation, etc.*, 1990 U.S. Dist. LEXIS 10460, at *2 ("By showing that [the customer] has a connection to activity [the SEC] is charged to investigate, the SEC has

shown reason for a belief that the bank records it [is seeking contains] relevant information."); *Rodriguez,* 712 F. Supp. at 162 (N.D. Cal. 1989) (bank records tracing proceeds deposited to an individual's bank account are relevant to investigation).

Alexander seeks to quash the subpoena for her bank records by claiming that the records the SEC has subpoenaed are "personal" records or kept for her "property management" business. Doc. 1, 2, and 3, all at 1. Those arguments do not support quashing the subpoena. The law does not require the SEC to accept Alexander's assertions that her bank accounts were not used for business transactions or contain no assets related to the real estate development companies the SEC is investigating. *See Karlis*, 613F. Supp. 2d at 153 (finding bank records were relevant even though movant claimed she had not been involved in her husband's dealings with the companies at issue); *Porrazzo v. SEC*, No. MC 18-00106 LEK-KSC, 2018 WL 1598655, *5 (D. Haw. Apr. 2, 2018) ("SEC is not required to accept Movants' statements without the opportunity to confirm them through examination of the records referenced in the Contested Subpoenas."); *Harrison v. SEC*, No. 1:12-CV-2379-ODE-SSC, 2012 WL 13130044, at *10 (N.D. Ga. Aug. 3, 2012) ("SEC is not required to accept Movants' explanations in lieu of its own investigation into how and why those

11

transactions occurred"); *Neuhaus v. SEC*, No. MISC 07-0025 FCD GGH, 2007 WL 1322340, *4 (E.D. Cal. May 4, 2007) (SEC not obligated to rely on movants' statements that certain accounts held at bank are not tied to scheme being investigated and is instead allowed to "perform inquiry to corroborate these statements").

Because the SEC has shown that Alexander has engaged in transactions related to possible violations of the federal securities laws, it has a basis for looking at her bank records to determine if she has received any funds from investors and how she may have used those funds.

To the extent that Alexander's argument is that her bank records contain some information that is not directly relevant to the investigation, that argument does not provide any basis to quash or limit the subpoena. *See Han v. SEC*, No. MC 19-68 PSG, 2019 WL 4543099, at *2 (C.D. Cal. July 10, 2019) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one. So long as the material sought by the subpoena touches on a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." (citation omitted)); *Carrillo Huettel, LLP v. SEC*, No. 11–CV–0065, 2011 WL 601369, at *2 (S.D. Cal. Feb. 11, 2011) ("Although not every responsive document produced by [the bank] may be relevant, there is reason to believe that the

records overall contain information relevant to the investigation."); *Davidov v SEC*, 415 F.Supp.2d 386, 389–390 (S.D.N.Y. 2006) (denying motion to quash subpoenas that "demand[ed] broadly worded and all-inclusive production of documents relating to [suspect] accounts"). The SEC needs to see all bank records to follow the money, trace any proceeds of fraudulent conduct, and identify persons engaged in potential misconduct or investors who may have sent money directly to Alexander.

## III. CONCLUSION

Based on the foregoing, the court should deny Alexander's motions to quash these subpoenas and enter an order directing the San Diego County Credit Union, the Primary Bank, and Wells Fargo Bank to comply immediately with the SEC's subpoenas.

> Respectfully Submitted,
> U.S. Securities and Exchange Commission
>
> *James M. McHale*
> _____
> Melinda Hardy, Assistant General Counsel
> D.C. Bar No. 431906
> James M. McHale, Senior Counsel
> McHale: D.C. Bar No. 111773
> McHale: N.Y. Bar No. 1578350
> Office of the General Counsel
> U.S. Securities and Exchange Commission
> 100 F Street, N.E.
> Washington, DC 20549-9613
> Phone: (202) 551-5046 (McHale)
> Fax: (202) 772-9263
> mchalejm@sec.gov
> Dated: May 22, 2024

**Verification of Opposition**

My name is Brandon Sisson. The SEC employs me as an attorney in its Division of Enforcement (ENF), Boston Regional Office, Boston MA. As an ENF Staff Attorney, my duties include conducting investigations of possible violations of federal securities laws. Among the matters assigned to me is *In the Matter of Legacy at Laconia, LLC, B-03732* for which the SEC issued the subpoenas in this proceeding.

I have read the foregoing SEC's Opposition to Alexander's motions. To the extent that this Opposition contains statements of fact, under penalties of perjury as set out in 28 U.S.C. § 1746, I affirm that these statements are true and accurate except where statements are based on information and belief. Where any statement is based on information and belief, I affirm that they are true and accurate based on my information and belief.

*Brandon M. Sisson*
_____
Brandon Sisson

Signed at Boston MA
Dated: May 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this day, May 22, 2024, I caused the foregoing Opposition to Alexander's April 24, 2024, challenges to the SEC's subpoenas to be submitted for electronic filing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Second, using United Parcel Service, I sent copies of this Opposition to Petitioner, Ms. Robynne Alexander at both her street address and mailing address below. And I sent it also to Ms. Alexander's email below:

>Ms. Robynne Alexander
>37 C Street
>Manchester NH 03102
>Mailing address:
>955 Goffs Falls Road, #5282
>Manchester NH 03108
>(603) 851-2856
>Email: robynne@infiniteequitiesgroup.com

*James M. McHale*
_____

James M. McHale